RED LINE TRANSFER AND STORAGE Co., INC. et al
*v.* ARKANSAS COMMERCE COMMISSION ET AL

5-5195                                              452 S. W. 2d 650

Opinion delivered April 13, 1970

*Louis Tarlowski,* for appellants.

*Pittman, Clay, Cole & Gilliland,* Memphis, Tenn., and *Warren & Bullion,* for appellees.

J. FRED JONES, Justice. The appellants, including Red Line Transfer and Storage Company, Inc., are certified motor carriers operating in intrastate commerce pursuant to authority granted by the Arkansas Commerce Commission; and the appellee-respondent, Atlas Transit, Inc., is a competitor engaged in the same business under similar authority. Red Line and the other competitors of Atlas bring this appeal from an adverse decision of the Pulaski County Circuit Court affirming an order of the Arkansas Commerce Commission denying the appellants' petition to clarify, revise and correct certificate No. 651 issued by the Commission to Atlas on December 14, 1966.

The facts are not in serious controversy and the question presented is primarily one of law, stated by the appellant as follows:

"The specific legal question here involved is whether under Section 10 of Act 397 of 1955 (The Arkansas Motor Carrier Act)—Section 73-1763, Ark. Stats., requiring a Certificate issued by the Commission to specify whether the permitee is authorized to serve intermediate and off-route points, which requirement is contained in the statute, and which Appellants contend have throughout the years been omitted from all Certificates issued to Atlas, and its predecessors (except the Certificate of July 15, 1966 not here involved) are erroneously included in the Certificate of December 14, 1966. The power and authority of the Commission to correct its errors of omission and commission by inserting in the Certificate of December 14, 1966,

without notice, hearing and proof of public need, specific authority to serve intermediate and off-route points, is also here involved."

Atlas received its first certificate in 1930 under authority of Act 99 of the Acts of 1927, as amended by Act 62 of 1929. Section 3 (a) of Act 62 pertains to applications for permits and provides as follows:

"Application for such permit shall be made by such corporation or persons, their lessees, trustees, or receivers, to the Commission, and shall specify the following matters:

The public highway or highways over which applicant intends to operate, and the cities and towns and the termini on the regular route to the [be] operated over."

Subsection (1) of § 3 (a), among other things provides that the applicant "shall maintain an office at some town or city along the route on which it proposes to operate."

The 1929 Act changed the responsibility from the applicant to the Commission for the giving of notice in connection with hearings, and Act 62 of 1929, § 3, (6), (c), in part, provides:

". . . After such hearing the Commission may issue the license certificate or refuse the same, or may issue the same with modifications, and upon such terms and conditions as in its judgment the public convenience and necessity may require. No license shall be issued to any person, firm, corporation or association or to associated interests for a total mileage in excess of an aggregate twenty per cent of the total mileage within the State Highway System, nor shall any such license, in any event, be exclusive."

Section 3, subsection (6), (d) also provides:

"Each license certificate issued under the provisions of this Act shall contain such matters as may be prescribed by the Commission, and shall specify that the same is issued for an indeterminate period of time, and after such license has been issued the same shall be cancelled only for cause after notice and a hearing as herein provided."

The Arkansas Motor Carrier Act of 1941 was enacted by Act 367 of the Acts of Arkansas for 1941, and § 10 of this Act (Ark. Stat. Ann. § 73-1763 (a) (b) [Repl. 1957]) is as follows:

"(a) Any certificate under this Act shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate; and there shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the Commission under this Act; provided, however, that no terms, conditions, or limitations shall restrict the right of the carrier to add to his or its equipment and facilities over the routes, between the termini, or within the territory specified in the certificate as the development of the business and the demands of the public shall require. (b) A common carrier by motor vehicle operating under any such certificate may occasionally deviate from the route over which, and/or the fixed termini between which, it is authorized to operate under the certificate, under such

general or special rules and regulations as the Commission may prescribe. (c) Any common carrier by motor vehicle transporting passengers under a certificate issued under this Act may transport to any place within this State special or chartered parties under such rules and regulations as the Commission may prescribe. (d) A certificate for the transportation of passengers may include authority to transport in the same vehicle with the passengers, newspapers, baggage of passengers, express, or mail, or transport baggage of passengers, in a separate vehicle."

Many of the common carriers, under the jurisdiction of the Arkansas Commerce Commission, have through the years been issued separate certificates for operation over separately designated highway routes. As a matter of convenience, in enforcing its powers and administering its duties, the Commission has for sometime, and usually on its own motion, been consolidating the separate route certificates held by a single carrier into a single certificate designating the various routes. It was under such procedure that the Commission issued to Atlas the certificate dated December 14, 1966, setting out the numerous regular routes over which Atlas was authorized to perform transportation service. For example, the routes were designated in language as follows:

"U. S. Highway 67, Texarkana, Arkansas, to Corning, Arkansas;

U. S. Highway 65, from Junction of U. S. Highway 64 to Eudora, Arkansas;

U. S. Highway 167, Little Rock, Arkansas, to Thornton, Arkansas;

State Highway 81, Jct. U. S. Highway 65, to Hamburg, Arkansas;

U. S. Highway 165, Jct. U. S. Highway 65 to Wilmot, Arkansas;

U. S. Highway 70, West Memphis, Arkansas, to Little Rock, Arkansas;

U. S. Highway 64, Ft. Smith, Arkansas, to Conway, Arkansas;

U. S. Highway 70, Hot Springs, Arkansas, to Kirby, Arkansas;

U. S. Highway 71, Alma, Arkansas, to Bentonville, Arkansas;

U. S. Highway 79, Marianna, Arkansas, to Fordyce, Arkansas;

U. S. Highway 79, Thornton, Arkansas, to Magnolia, Arkansas;

State Highway 15, Pine Bluff, Arkansas, to Warren, Arkansas;

State Highway 11, Junction U. S. Highway 67 to Batesville, Arkansas."

The certificate then contained the language to which the appellants object, as follows:

"* * * and applicant is permitted to tack these routes with its presently certificated routes at all common points of joinder and to serve all intermediate points on the routes hereinabove set forth."

Immediately following the above language, the certificate then provides for an alternate route for operating convenience only, over

"State Highway 7, Camden, Arkansas, to Smackover, Arkansas, and return serving no intermediate points."

The certificate of December 14, 1966, further provides that it shall supersede the same numbered certifi-

cates dated August 15, 1961, and July 15, 1966. The certificate dated August 15, 1961, provided that the transportation service to be performed by Atlas was to be over regular routes, the same as the certificate dated December 14, 1966, less the eight additional routes set out in the certificate dated July 15, 1966. This certificate also authorizes an alternate route for operating convenience only, over

"State Highway 7, Camden, Arkansas, to Smackover, Arkansas, and return serving no intermediate points."

The certificate dated July 15, 1966, pertains to eight separate routes and recites that it was issued after notice of hearing at which no one appeared in opposition. The findings and order of the Commission contained in this certificate appear as follows:

"From a consideration of the foregoing it is quite apparent there is a need for the proposed service as set out in the application and that the said application should be granted; *that the applicant be permitted to join its presently certificated routes with the routes hereinafter set forth and to serve all intermediate points thereon,* and that the applicant is financially able and willing to perform the services necessary. It is further apparent that notice has been properly given to the public by publication of the application in the Federal Register on June 8, 1966, as aforesaid, and proper notice filed with the Interstate Commerce Commission at Washington, D. C.

IT IS, THEREFORE, ORDERED, that the applicant be, and it is, AUTHORIZED to transport General Commodities as a common carrier in intrastate commerce over the following routes:

State Highway 14, Junction U. S. Highway 63 to Batesville;

State Highway 10, Little Rock to Perry;

State Highway 60, Arkansas River to Plainview;

State Highway 113, Junction State Highway 60 to Junction State Highway 10 (serving Fourche as off-route point);

State Highway 7, Junction State Highway 60 to Ola;

State Highway 28, Rover to Ola (serving Kingston as off-route point)

State Highway 27, Rover to Danville;

State Highway 23 and 116, Booneville to State Sanatorium.

This Commission further finds that the present and future public convenience and necessity require operation by applicant in interstate or foreign commerce over regular routes in the transportation of General Commodities and *that applicant be permitted to tack with its presently certificated routes at all common points of joinder and to serve all intermediate points on the routes herein above set forth."* (Emphasis supplied).

The certificate in controversy, No. 651, has more or less grown up with the highway transportation business in Arkansas and it is no stranger to litigation. It was originally issued on January 28, 1930, to Pine Bluff Baggage and Transfer Company (P. D. Gathright). Under this original certificate authority was granted "to operate a general transfer and drayage business between the following points to-wit:

General transfer and drayage business at Pine Bluff *and to engage in long distance transportation of property."* (Emphasis supplied).

Gathright sold out to Johnson in 1948 and under date of January 3, 1951, an ex parte proceeding was insti-

tuted by the Commission in order to clarify the word "property" as used in the 1930 certificate and to define the routes over which Atlas was authorized to operate. Other carriers appeared as interested parties at a hearing on the matter and in the order issued on January 3, 1951, the Commission, among other things, found as follows:

> "The evidence of defendant Johnson, shows that the Gathright Van & Transit Company and his Company, Atlas Transit & Warehouse Company, as successors, have been engaged in the transportation of all kinds of property on call and demand over the major highways within the State of Arkansas. * * * The Commission finds from the pleadings in this case that in response to the complaint and the intervention, the defendants assert, contend and admit that they are and have been carriers of general commodities.

> \* \* \*

> The Commission further finds that since a valuable consideration was paid for the property rights involved in these certificates, that to revise the Certificate No. 651 as sought by the plaintiffs and interveners herein, would destroy these valuable property rights heretofore purchased by defendants. Moreover, after a twenty year lapse of time since the original issue of these certificates and by the transfer of the operating rights by this Commission on three separate occasions, the operating rights have become fixed and the defendants should continue to operate over the highways as hereinafter set out as a Common Carrier of General Commodities, Household Goods and Heavy Machinery.

> IT IS, THEREFORE, ORDERED by the Commission that the defendants, Otis P. Johnson, Jr. and Robert C. Johnson, dba ATLAS TRANSIT & WAREHOUSE COMPANY, be and they are hereby authorized to operate as a COMMON CARRIER

OF GENERAL COMMODITIES, HOUSEHOLD GOODS, and HEAVY MACHINERY, within the State of Arkansas, INTRASTATE, between the points on the following highways:

U. S. Highway 67 from Texarkana to Corning;

U. S. Highway 65 from Omaha to Eudora;

U. S. Highway 167 from Little Rock to Thornton;

State Highway 81 from Junction of U. S. 65 to Hamburg;

U. S. Highway 165 from Junction of U. S. 65 to Wilmot;

U. S. Highway 70 from West Memphis to Little Rock. . ."

This order of the Commission became effective September 11, 1951; and was approved by the circuit court, and this court on appeal. *Ark. Motor Freight Lines* v. *Johnson,* 221 Ark. 157, 252 S. W. 2d 814. The intermediate points along the designated highways were not involved in *Johnson,* but the logic pertaining to the commodities Atlas was authorized to carry in that case is just as valid in the case at bar. In *Johnson* we said:

". . . Under the authority of that permit he [Johnson] expanded his business to include the conveyance of general commodities, and he and Atlas occupied that field for about a decade. It does not appear that any competing carrier objected until the Commission itself raised the issue in 1950. In these circumstances we cannot say that Gathright's conduct was unauthorized or that the Commission was in error in allowing it to continue."

In compliance with the mandate from this court in

*Johnson,* on January 8, 1953, the Commission entered its order as follows:

"That in compliance with the mandate of the Supreme Court of Arkansas issued in this cause and the order of the Pulaski Circuit Court filed with this commission, that Otis P. Johnson, Jr., and Robert C. Johnson, doing business as Atlas Transit and Warehouse Company, be and they are hereby authorized to operate as a common carrier of general commodities, household goods and heavy machinery within the State of Arkansas, *intrastate between points and places on the following highways,* as ordered by the Pulaski Circuit Court, 2nd Division, in its order of January 7, 1953." (Emphasis supplied).

We are not impressed by the appellants' argument pertaining to the reasons for granting a motion to strike the testimony of a Mr. Gilmore in another and different proceeding before the Commission. We are impressed with the logic of the Commission's reasoning, which was carried forward in our own opinion in *Johnson,* and we affirm the judgment of the trial court for two primary reasons. Atlas and its predecessor in title of certificate No. 651 have been servicing the routes here involved, including the intermediate points, for forty years without question by the appellee interveners, any other common carrier or the Commission itself, and as we said in *Johnson:* In these circumstances we cannot say that Atlas' conduct was unauthorized or that the Commission was in error in allowing it to continue. Furthermore, Atlas and its predecessor were servicing intermediate points without objection even before there was a statute requiring designation. After proper notice and without opposition, the Commission, by its order of July 15, 1966, authorized eight separate routes with express authority to service all intermediate points. On July 15, 1966, Atlas already had authority to service the remainder of its routes under certificate order dated August 15, 1961. The July 15, 1966, order not only authorized the additional eight

new routes and intermediate points thereon, but the July 15, 1966, order permitted Atlas to tack with its routes already authorized at all points of joinder "and to serve all intermediate points on the routes hereinabove set forth." We are of the opinion that the words "hereinabove set forth" are broad enough to cover the routes Atlas had been servicing for thirty-six years, as well as the eight new routes authorized in 1966 to which the old routes were tacked.

We conclude, therefore, that the order of the Commission, as affirmed by the circuit court, is not void for lack of notice that Atlas was proposing to do what everyone knew it had been doing without protest for over thirty years. We are of the opinion that the wording of the order of July 15, 1966, satisfies the statutory requirements anyway.

Affirmed.

HARRIS, C. J., not participating.